## FOLLETT & BRADLEYS v. HENRY STANTON.

Where the keeper of the boarding house, at which the plaintiffs hired their teamsters boarded, furnished unwholesome food for the servants to take with them to their place of work, for their dinners, it was held that the teamsters had no authority to order food at the inn of the defendant, who knew the circumstances, and pledge the credit of the plaintiffs therefor,— the plaintiffs being ignorant of the nature of the food furnished to the teamsters, and never having authorized them to procure food of the defendant on their credit; and that no such authority could be implied from the fact that the plaintiffs had at sundry times specially directed the teamsters to get their board at defendant's house,—nor from the fact that the teamsters at sundry times procured food there, for which the auditor allowed the defendant on the ground of necessity,—nor from the fact that,

one of the teamsters having told one of the plaintiffs, who had hired him separately, that he occasionally dined at defendant's house, the plaintiff, supposing he did so on his own credit, told him to keep an account of what he paid the defendant, and he, plaintiff, would repay him.

BOOK ACCOUNT. Exceptions were taken by the defendant to the disallowance by the auditor of certain items in the account of the defendant, who was an innkeeper. The plaintiffs were partners, but each hired separately a teamster, whom they employed in drawing lumber in which they were jointly interested. The items disallowed were for dinners furnished by the defendant to the teamsters, in reference to which the auditor reported that they were furnished without authority from, or notice to, the plaintiffs.

It appeared that, at one time, previous to the accruing of the items disputed, two of the men were specially directed by one of the plaintiffs to get dinners at the defendant's inn ; that at some times it happened that the men were accidentally detained near defendant's over night, and obtained their meals, lodging, &c., at defendant's inn, and these charges were allowed by the auditor on the ground of necessity. At another time, also previous to the accruing of the disputed items, the men had carried their dinner with them from their boarding place in Burlington, and, on preparing to eat the same in the defendant's bar room, it was discovered that the provisions were unwholsome, and unfit to eat. The men thereupon agreed to call upon defendant for dinner, and have the same charged to the plaintiffs. The defendant was present, and acquainted with the reason. This item was also allowed by the auditor on the ground of necessity.

On the return of the men, they informed the plaintiffs of the facts, who replied that they would see that the men were better provided for in future. The plaintiffs thereupon complained to the keeper of the boarding house, and for some weeks thereafter food of a satisfactory quality was provided for the men, when it was necessary for them to take their dinners with them. But after some weeks unsuitable and unwholesome food was often provided by the boarding house keeper for the men to carry, and on these occasions the men procured dinners at the defendant's house, who charged them to the plaintiffs, but without any directions from either the men, or the

plaintiffs; and the plaintiffs had no notice that the food of the men was unsuitable, or that they were in the habit of dining at the defendant's house. These items were disallowed by the auditor.

At different times after this, when the men were constantly at work near defendant's house, they were directed by the plaintiffs to procure their board, &c., there, and they did so. They also procured sundry dinners, &c., at the defendant's house, at different times, as matter of convenience merely; of which the plaintiffs had no notice, except that one of them was informed, by the man employed by him, that he sometimes eat at defendant's house, and the said plaintiff, not understanding that such dinners were charged to him, or to the firm, told the man to keep an account of what he should pay the defendant, and that he, plaintiff, would repay the same. Both of these classes of items were allowed.

The Court rendered judgment for the plaintiff on the report, and the defendant excepted.

*J. Maeck* for defendant.

———— for plaintiffs.

The opinion of the court was delivered by

BENNETT, J. The plaintiffs' teamsters must be regarded as their special agents, or servants, having no general powers to bind them; and the question made upon the report of the auditor is, whether such facts are found by him as should charge the plaintiffs with the payment for the meals of victuals, now in question, procured by the teamsters at the house of the defendant. The auditor finds that the teamsters procured the dinners at the house of the defendant, and that he charged them to the plaintiffs without their direction, or that of either of the teamsters, and that the plaintiffs never *authorized* the teamsters to procure such meals, and had no notice of their doing it, or that the dinners provided for them, at their boarding house, were unsuitable or improper. As the auditor expressly finds that the plaintiffs never *authorized* the teamsters to procure meals or board at the defendant's house, except on the special occasions set forth by him, and as this negation of authority is in general terms,

excluding an *implied* as well as an *express* authority, there would seem to be an end of the question. But it may be well to see what facts are reported by the auditor, and then inquire whether they are such as to give the teamsters a general credit at the defendant's house, whereby they could charge the plaintiffs with payment for their dinners at pleasure.

The auditor finds that, on the 7th of May, two of the teamsters were directed by one of the plaintiffs to get dinner at the defendant's house; and that between the 19th of August and 24th of September, when the teamsters were constantly engaged the whole time near the defendant's house, they were directed to keep their teams and board at his house, and have the bills charged to the plaintiffs. The fact that the teamsters occasionally had meals at Stanton's house, which the auditor reports he allowed from the necessity of the case, can furnish no reason why the disallowed items should have been allowed. It neither proves nor disproves an authority in the teamsters to bind the plaintiffs to the payment of the items now in dispute. Had the plaintiffs recognized their authority on such occasions by a payment of the defendant's bill, this would have had its effect before the auditor, as tending to prove an implied authority in procuring the subsequent meals, now in dispute, upon the credit of the plaintiffs. Ordinarily, it is true, the extent of the authority conferred by the master upon the servant can only be ascertained by implication from the recognition, conduct, or acquiescence of the master. As a general rule it is correctly laid down, that, if a master usually intrust his servant to buy goods upon credit, he will be bound by his acts of this nature, even though he have specially prohibited the servant from buying upon credit. In such case the nature and extent of the authority of the servant is deduced, as a fact, from the nature and extent of his usual employment.

It seems from the report that the plaintiffs' teamsters had their business so arranged that about four days in a week they dined at their boarding house in Burlington, and on the other days carried their dinners, and usually eat them in the defendant's bar room; all which was known to the defendant. The teamsters had carried their dinners on the days in which they got the meals now in dispute, though it is true the auditor finds that the provisions carried were not suit-

able for them.   This, however, furnishes no reason why the defendant should presume an authority in the teamsters to get the dinners upon the credit of the plaintiffs, but rather the reverse.   The fact that one of the plaintiffs was informed by the teamster, employed by him, that he sometimes dined at the defendant's house, and that he (supposing it was on the teamster's own credit,) told him to keep an account of the sum paid, and he would repay it, cannot have the effect to charge the plaintiffs with the items in dispute.   It was no act of theirs, carried home to the defendant, from which he could deduce an authority in the teamsters to bind the plaintiffs. We cannot imagine that the defendant could have supposed that the teamsters, when they had brought their dinners with them, had authority at the same time to get them at the defendant's house upon the credit of the plaintiffs, no matter how poor the dinners provided for them were.   If the teamsters were dissatisfied with them, it was their duty to give their employers notice.   If the defendant suffers in this case, it is from his own folly, and not because he has been imposed upon by the plaintiffs.   We find nothing in the report which should, as matter of law, make the plaintiffs liable for the dinners disallowed by the auditor; and he finds, as a matter of fact, that the plaintiffs never did *authorize* the teamsters to purchase them on their credit.

The judgment of the county court is affirmed.